FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2015 MAY -6  P 2: 09

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| JELENA SCHULTZ, on behalf<br>of herself and others similarly situated | ) ) ) |
| **and** | ) ) |
| THOMAS MILLER, on behalf of<br>himself and others similarly situated | ) ) ) |
| **Plaintiffs** | ) Case No. 1:15cv594<br>) TSE/MSN |
| **v.** | ) JURY TRIAL DEMANDED |
| MGA RESEARCH CORPORATION, | ) ) |
| **Defendant.** | ) |

## FAIR LABOR STANDARDS ACT
## COLLECTIVE ACTION COMPLAINT

Plaintiffs Jelena Schultz and Thomas Miller ("Plaintiffs") bring this action on

behalf of themselves and similarly situated individuals to recover unpaid overtime,

unpaid wages, liquidated damages and attorneys' fees from their former employer,

MGA Research Corporation ("MGA"), for violations of the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §201 *et seq.*

MGA is a corporation that provides crash testing services and equipment

with facilities in Akron, New York; Burlington, Wisconsin; Ontario, Canada; Lincoln,

Alabama; Troy, Michigan; Irving, Texas; Greer, South Carolina; and Manassas,

Virginia.  Plaintiffs, employees at the Defendant's Manassas, Virginia location, were

victims of pay practices and policies that deprived them of lawful wages in willful

violation of the FLSA. In addition, Plaintiff Miller was terminated in retaliation for his complaints regarding the unlawful pay policy.

### JURISDICTION AND VENUE

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1337 (commerce), 28 U.S.C. §1331 (federal question), and 29 U.S.C. §216(b) (FLSA).

2.  Venue is proper in this Court under 28 U.S.C. §1391. The causes of action asserted herein occurred and/or accrued in significant part in Manassas, Virginia.

### PARTIES

3.  Plaintiffs are adult persons residing in Northern Virginia, and at all relevant times asserted in this Complaint were "employees" of the Defendant as that term is defined by §203(e) of the FLSA, in its Manassas, Virginia, facility.

4.  Plaintiffs were employed at MGA's Manassas facility within three years of the date of this filing.

5.  MGA is an enterprise, as defined in 29 U.S.C. §203(r)(1), engaged in interstate commerce, in the business of providing crash testing equipment and services in Virginia, New York, Alabama, Wisconsin, Michigan, South Carolina, and Canada.

6.  Upon information and belief, Defendant has annual receipts in excess of $500,000.

7.  MGA's is a corporation whose principal place of business is Akron, New York.

8.      For the entire duration of the events giving rise to the allegations in this Complaint, Defendant was the Plaintiffs' "employer" as that term is defined by 29 U.S.C. §203 (d) of the FLSA.

## FACTUAL ALLEGATIONS

9.      Plaintiffs re-allege and incorporate the preceding and subsequent paragraphs as if fully set forth herein.

10.      Plaintiff Jelena Schultz began her employment at MGA in Manassas, Virginia, on or about September 5, 2011.  Her position was administrator, which she held until she voluntarily ended her employment on or about July 5, 2014.

11.      As an administrator, Schultz performed non-exempt job duties including answering the telephone, ordering supplies, composing test reports, generating invoices, handling accounts receivable/payable, processing new hire paperwork, generating time sheets, and other administrative tasks as needed.

12.      Schultz's supervisor was Steven Fazlovic.  Mr. Fazlovic had the power to hire and fire.

13.      When she was hired, it was Schultz' understanding that she would be paid a salary that covered forty hours of work per week.

14.      Schultz accepted the job and moved to Northern Virginia from Hampton, Virginia with the understanding that when she worked more than forty (40) hours she would receive time and a half for overtime. She would not have made this move if this had not been her understanding.

15.     Her rate of pay as written on her paychecks was $18.75 per hour. This hourly amount was recorded consistently on each paycheck until she received a raise. The hourly rate did not vary.

16.     Schultz' regular hours of employment were 8:00 a.m. to 5:00 p.m.

17.     Schultz typically worked through her scheduled one hour lunch break including answering phones.

18.     Schultz worked overtime an average of approximately three and one half hours per week.

19.     Schultz understood that she would receive her full salary if she worked less than forty hours, such as taking time off for a doctor's appointment, and that she would receive time and a half her regular hourly rate for overtime for hours worked over forty.

20.     Schultz received a paper from Mr. Fazlovic when she started her employment titled "Full Time Non-Exempt Associate Benefits." The documents states: "Overtime Pay: Calculated according to the guidelines and requirements of the Fair Labor Standards Act (FLSA), as amended, for "Salaried Employees."

21.     Schultz believed until August of 2012 that she was receiving time and a half for hours worked over forty hours although she did not specifically calculate it.

22.     In August of 2012 Schultz was told that she was receiving a pay increase to $19.33 per hour. This hourly amount appeared on every paycheck and never varied until she got a raise a year later.

23.     On or about September 1, 2012, Schultz noticed that her overtime payments decreased, but there was no discussion or explanation prior to this change.

24.     On or about September 1, 2012, Schultz noticed that a pay deposit from the company was reversed and removed from her account.

25.     Schultz contacted Laura Graff in the Human Resources Department to inquire as to why her overtime payments were reduced. Graff responded that the new compensation rate was the rate she was supposed to have been getting all along.

26.     Schultz also confronted her supervisor Mr. Fazlovic to ask him why her overtime rate was lower. He told her that she was being paid "piece rate," and that the combination of piece rate, bonuses and raises each year "equaled out." Schultz did not understand since she was not engaged in "piece work" upon which to base a "piece rate."

27.     Schultz never received any other explanations as to why her overtime was being computed differently and why she was receiving less than time and one half for each hour worked over forty. She continued to believe that her salary was intended to cover her forty-hour work week and that she was entitled to time and a half for hours worked over forty.

28.     Schultz observed the hiring process of other hourly employees and in her observation other employees were led to believe that their salary was for a forty hour workweek. Other hourly employees also had the belief that they were entitled to receive time and a half for overtime hours.

5

29.     In August of 2013, Schultz was told she would receive a raise to $19.91 per hour. This hourly amount subsequently appeared on each paycheck and did not vary.

30.     Schultz looked on the company online network and found a document entitled, "Computing Overtime Pay." The first sentence of the document states: "Overtime must be paid at a rate of at least one and one-half times the employee's regular rate of pay for each hour worked in a workweek in excess of the maximum allowable in a given type of employment." The document contains examples "based on a maximum 40-hour workweek." She believed that this document supported her understanding that she should be receiving time and a half for her overtime work.

31.     Between approximately August 3, 2012 and July 5, 2014, Schultz worked approximately 356.5 hours of overtime. At time and a half, she should have been paid approximately $12,000 in overtime pay. She received approximately $3,400.

32.     Between approximately August 3, 2012 and July 5. 2014, Schultz regularly worked through her lunch hour and did not receive compensation for that time. At one and a half times her hourly rate, she is entitled to approximately $17,000 for her uncompensated lunch hours during which she worked.

33.     Plaintiff Thomas Miller began his employment on December 14, 2010, as a non-exempt test technician. He was terminated on June 11, 2014.

34.     Miller's duties involved physically moving objects, test setup, and making fixtures for car or aircraft seats for safety testing under the direction of engineers.

35.     Miller's supervisor was Steve Fazlovic. Mr. Fazlovic had the power to hire and fire.

36.     Miller was hired to work a 40 hour work week, from 8:00 a.m. to 5:00 p.m., with one hour off for lunch.

37.     Miller regularly worked through his lunch break. He was not compensated for the hour designated as lunch break.

38.     Miller's hourly rate at the time of hire was $15.38.

39.     This hourly amount appeared on each check until he received a pay raise.

40.     Miller's understanding was that he was to be paid on a salary basis at an hourly rate of $15.38, and that this salary would cover a forty hour work week. He would be paid overtime of time and a half for hours worked over 40. If he took time off for events such as doctor visits, he would not receive a reduction in salary.

41.     Mr. Miller accepted the offer of employment when he was living in Pittsburgh. He would not have moved to Northern Virginia for this job without the belief that he would be receiving time and a half for hours worked over forty each work week.

42.     Miller worked an average of 6.5 hours of overtime each week.

43.     When Miller was hired he received a paper entitled "Full Time Non-Exempt Associate Benefits" stating that overtime pay would be calculated according to the guidelines and requirements of the Fair Labor Standards Act (FLSA), as amended for "Salaried Employees. "

44.     Mr. Miller believed that prior to August, 2012, he was receiving time and a half for hours worked over forty in each work week, although he did not specifically calculate the amount.

45.     On or about August 3, 2012, Miller received a raise in his hourly rate from $16.83 to $17.40.

46.     This new hourly rate subsequently appeared on each paycheck and did not vary.

47.     Shortly thereafter, Miller noticed that his overtime payments decreased and were inconsistent.

48.     Miller complained to Mr. Fazlovic who told him that he was being paid "piece rate." This did not make any sense to Miller since he was not performing "piece work," and Miller stated as much to Fazlovic.

49.     Miller complained about the failure to pay proper overtime also to Michael Janovitz, a Wisconsin-based manager who occasionally came to Manassas. Janovitz told Miller that the reduced overtime pay was because he was "salary biweekly."

50.     Besides being inconsistent with Mr. Fazlovic's explanation, Miller believed that as a salaried non-exempt employee paid on the basis of a forty hour work week, he was legally entitled to overtime at time and a half of his hourly rate over forty hours.

51.     On or about December of 2013 Miller complained to Susan Stone, a New York-based manager, after he was asked to clock out for lunch despite the fact

that he normally worked through lunch.  He also complained about not being paid overtime properly.

52.     Miller complained on several occasions that he was not receiving the time and a half overtime he was entitled to.  Each time he got a different, confusing response.  Once Mr. Fazlovic told him it was because he was "semi-salaried."

53.     At some point Mr. Fazlovic placed two documents in Miller's correspondence folder on line.  One was entitled "Computing Overtime Pay."  The second was entitled "MGA Research Corporation., 10/26/05, Non Exempt Overtime Computation."  Miller asked Fazlovic to explain what these papers were saying, and Mr. Fazlovic was unable to explain.  Instead, Mr. Fazlovic stated that because of his health insurance benefits, bonuses, and raises Miller was doing well with this arrangement and he should be satisfied.

54.     After complaining and questioning his overtime payments on at least five occasions, on June 9, 2014, Miller told Fazlovic that he would no longer work over his 40 hour schedule if he was not going to be paid properly.  At that time, Mr. Fazlovic said it was his right not to work overtime and he would "see how it goes."

55.     Two days later, on June 11, 2014, Miller was terminated from his employment.

56.     Between approximately August 4, 2012, and June 11, 2014, Miller worked approximately 300 hours of overtime.  He should have received approximately $9,200 for his overtime work.  He was paid approximately $3,450.

57.     Miller regularly worked through his lunch hour and was not compensated for this time.  He is therefore owed time and a half for approximately 440 hours, which is approximately $11,200.

58.     Miller was terminated in retaliation for his repeated complaints that he be paid the lawful amount of overtime that he was entitled to.

## CLAIMS UNDER FLSA

59.     Plaintiffs re-allege and incorporate the preceding and subsequent paragraphs as if fully set forth herein.

60.     Plaintiffs bring this collective action on behalf of themselves and of similarly situated individuals to recover unpaid compensation pursuant to FLSA. Since on or about August, 2012, the Defendants have failed to pay time and one half for hours worked over forty hours in one work week.  The Defendants also failed to compensate Plaintiffs for lunch hours during which they regularly performed work. The Defendants also retaliated against Miller and terminated him on June 11, 2014 for complaining about the unlawful pay policy.

61.     The defendant is engaged in interstate commerce as defined by §203(s)(1) of the FLSA.

62.     At all times material to this action, Plaintiffs were employees of the Defendant as defined by §203(e)(1) of the FLSA, and worked for the Defendant within three (3) years preceding the filing of this action.

63.     The provisions set forth in §§206 and 207 of the FLSA, respectively, apply to the Defendant, and the Plaintiffs were covered by §§206 and 207 of the FLSA while they were employed by the Defendant.

64.     At all times relevant to this action, Plaintiff Schultz was employed as a non-exempt administrator.

65.     At all times pertinent hereto, Plaintiff Schultz was required to perform non-exempt work without being compensated for hours worked over forty hours at a rate of time and one half her hourly rate.

66.     At all times pertinent hereto, Plaintiff Schultz was required to work during lunch hours without being compensated.

67.     At all times relevant to this action, it was Schultz' understanding that she was a non-exempt salaried employee whose salary was for a forty-hour work week. She believed that she was supposed to receive overtime pay of one and one half times the hourly amount that appeared on her paycheck every pay period.  This hourly pay rate never varied other than when she received an annual raise.

68.     At all times relevant to this action, Plaintiff Miller was employed as a non-exempt test technician.

69.     At all times pertinent hereto, Plaintiff Miller was required to perform non-exempt work without being compensated for hours worked over forty hours at a rate of time and one half of his hourly rate.

70.     At all times pertinent hereto, it was Miller's understanding that he was a non-exempt salaried employee whose salary covered a regular 40 hour work schedule who was entitled to receive time and a half for hours worked over forty hours based upon the unvarying hourly rate that appeared on each paycheck.

71.     Neither Schultz nor Miller was ever told that their salary was intended to cover all hours worked regardless of how many.  It was their understanding that their salary was intended to cover forty hours.

72.     The defendant knowingly and intentionally failed or refused to pay the Plaintiffs overtime as required by the provisions of the FLSA.

73.     On information and belief, for at least three (3) years, the Defendant has been aware of the requirements of the FLSA and its corresponding regulations. Notwithstanding this fact, Defendant willfully refused and failed to pay Plaintiffs overtime as required by the FLSA.

74.     The Defendant has shown a reckless disregard for the FLSA'S overtime requirements.

75.     The Defendant has not acted in good faith with respect to the failure to pay overtime compensation. The defendant had no legitimate reason to believe that its actions and omissions were not a violation of the FLSA, thus entitling Plaintiffs to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime.

### COLLECTIVE ACTION ALLEGATIONS

76.     Plaintiffs bring his lawsuit pursuant to 29 U.S.C. §216(b) as a collective action on behalf of the following class of potential opt-in litigants:

> Individuals who in the period May 6, 2012 to the present: (1) were or are non-exempt salaried employees of MGA Corporation in Virginia, Wisconsin, Alabama, South Carolina, New York, Texas or Michigan; (2) did or do work more than 40 hours per work week; (3) did not get paid at the required overtime rate of time and a half for hours worked over forty per workweek.

77.     Plaintiffs desire to pursue their FLSA claims on behalf of any individuals who opt in to this action pursuant to 29 U.S.C. §216(b).

78.     Plaintiffs and the above class members are "similarly situated," as that term is defined in 29 U.S.C. §216(b), because *inter alia*, all proposed class members worked pursuant to Defendant's previously described common business practices, and as a result of such practices, were not actually paid time and a half for overtime work performed. Resolution of this action requires inquiry into many common facts, including, *inter alia*, Defendant's common compensation and payroll practices, and the class members' understanding that their salaries were meant to cover a forty hour workweek.

79.     The approximate number of class members is believed to be over twenty.

## COUNT I
## FAILURE TO PAY OVERTIME PROPERLY

80.     Plaintiffs re-allege and incorporate the preceding and subsequent paragraphs as if fully set forth herein.

81.     The Defendant violated Plaintiffs' and similarly situated individuals' rights under the FLSA by failing to pay Plaintiffs and similarly situated individuals overtime compensation at time and one half for hours worked in excess of forty (40) hours in each workweek that Plaintiffs worked .

82.     The Plaintiffs and similarly situated individuals were entitled to all the rights and protections of the FLSA and the Defendant's failure to pay Plaintiffs overtime at a rate of time and one half for hours worked over forty in each workweek was in violation of the FLSA.

13

83.     The Defendant acted willfully and with reckless disregard for Plaintiffs' rights under the FLSA.

84.     Plaintiffs are entitled to back pay for all overtime hours worked during their employment with the Defendant in an amount equal to one and one-half times their regular rates of pay.

85.     Plaintiffs are entitled to back pay at time and a half for hours worked during the lunch breaks for which they were not compensated.

86.     As a result of the Defendant's willful and reckless actions, Plaintiffs are entitled to recover liquidated damages pursuant to 29 U.S.C. §216(b).

60. Plaintiffs are entitled to recover costs and attorneys' fees pursuant to 29 U.S.C. §216(b).

## COUNT TWO
## RETALIATORY DISCHARGE

87.     Plaintiff Thomas Miller was terminated on June 11, 2014, in retaliation for his complaints regarding the employer's failure to pay time and a half for hours worked over forty in one work week.

88.     Defendant's retaliatory discharge is in violation of 29 U.S.C §215(a)(3) and the Defendant is liable to Miller for lost wages and benefits, an equal amount as liquidated damages, attorneys' fees and costs, and any other relief deemed appropriate by the Court.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs each, individually, pray for the following relief and request that this Court:

14

A.     Enter judgment against the Defendant and declare that the acts and practices complained of herein are violations of the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*;

B.     Enter judgment against the Defendant and award Plaintiffs damages in the amount of their respective unpaid overtime compensation, plus an equal amount of liquidated damages pursuant to 29 U.S.C. §216(b), and prejudgment interest;

C.     Enter judgment against the Defendant and award Plaintiff Miller damages pursuant to 29 U.S.C. §215(a)(3) in the amount of back pay from the time of his unlawful retaliatory discharge, plus an equal amount in liquidated damages;

D.     Enter judgment against the Defendant that the Defendant's violations of the FLSA were willful;

D.     Enter judgment against the Defendant for post-judgment interest at the applicable legal rate;

E.     Award Plaintiffs their attorneys' fees and costs incurred in this action;

F.     Award such further relief as this Court deems just and appropriate.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

**Dated:** May 6, 2015

Respectfully submitted,

Jelena Schultz and Thomas Miller


By: _Virginia R Diamond_
Virginia R. Diamond (VSB No. 20992)
ASHCRAFT & GEREL, LLP
Suite 650, 4900 Seminary Road
Alexandria, VA 22311
Telephone: (703) 627-5510
Facsimile: (703) 820-0630
Email: vdiamond@ashcraftlaw.com
*Counsel for Plaintiffs*


By: _Craig A. Brown_
Craig A. Brown (VSB No. 29385)
ASHCRAFT & GEREL, LLP
Suite 650, 4900 Seminary Road
Alexandria, VA 22311
Telephone: (703) 627-5510
Facsimile: (703) 820-0630
Email: cbrown@ashcraftlaw.com
*Counsel for Plaintiffs*